# 19-4092

*To Be Argued By:*
ERIC B. MILLER

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

**Docket No. 19-4092**

ROYCE CORLEY,
*Plaintiff-Appellant,*

-vs-

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR THE UNITED STATES OF AMERICA

JOHN H. DURHAM
*United States Attorney*
*District of Connecticut*
157 Church Street, 25th Floor
New Haven, Connecticut 06510
(203) 821-3700

ERIC B. MILLER
SANDRA S. GLOVER
*Assistant United States Attorneys (of counsel)*

VANESSA PATTERNSON, R.D.H., in her official capacity as employee of the Federal Bureau of Prisons under the Department of Justice, an agency of the United States of America,

CHRISTINE HENG, D.D.S., in her official capacity as employee of the Federal Bureau of Prisons under the Department of Justice, an agency of the United States of America,

*Defendants.*

## Table of Contents

Table of Authorities ............................................v

Statement of Jurisdiction ................................ xiv

Statement of Issues Presented for Review ........xv

Preliminary Statement .......................................1

Statement of the Case .........................................3

A. Factual background....................................3

B. Procedural background ...............................4

1. Corley's federal suit ...............................4

2. The district court's order granting the motion to dismiss ...................................5

Summary of Argument .......................................7

Argument............................................................9

I. The district court properly dismissed Corley's FTCA complaint because he failed to comply with a substantive condition for instituting and maintaining a medical malpractice claim under Connecticut law .....................................9

A. Relevant facts ..............................................9

B. Governing law and standard of review .......9

C. Discussion ............................................... 12

1. Conn. Gen. Stat. § 52-190a is a substantive defense for medical malpractice actions that must be available for actions against the United States to ensure compliance with the limited waiver of sovereign immunity in the FTCA................. 12

2. Corley's counter-arguments are not persuasive.................................................. 18

II. Section § 52-190a does not deprive pro se prisoners from having meaningful access to the courts..................................................... 25

A. Relevant facts ......................................... 25

B. Governing law and standard of review ... 25

C. Discussion ............................................... 27

III. Corley's *in forma pauperis* status did not excuse his failure to comply with Conn. Gen. Stat. § 52-190a or entitle him to a 630-day extension of time to complete service ......... 30

A. Relevant facts ......................................... 30

B. Governing law and standard of review ... 31

C. Discussion ............................................... 33

1. Corley's *in forma pauperis* status did not shift his § 52-190a obligations onto the district court or create "good cause" excusing his failure of service ................ 33

2. The district court did not abuse its discretion when it declined to grant a 630-day extension of time for Corley to obtain a good-faith certificate ................ 36

IV. The district court properly exercised its discretion to transfer this case to Connecticut under 28 U.S.C. § 1404(a) .......................... 38

A. Relevant facts .......................................... 38

B. Governing law and standard of review ... 39

C. Discussion ................................................ 40

Conclusion ........................................................ 44

Federal Rule of Appellate Procedure 32(g)
Certification

Addendum

## Table of Authorities

Pursuant to "Blue Book" rule 10.7, the Government's citation of cases does not include "certiorari denied" dispositions that are more than two years old.

### Cases

*Bank of Am., N.A. v. Wilmington Trust FSB*,
943 F. Supp. 2d 417 (S.D.N.Y. 2013) ............ 42

*Bank of New York v. First Millennium, Inc.*,
607 F.3d 905 (2d Cir. 2010) ............................ 39

*Bennett v. New Milford Hosp., Inc.*,
12 A.3d 865 (Conn. 2011) ............................... 12

*Bounds v. Smith*,
430 U.S. 817 (1977) ....................................... 26

*Bramson v. Sulayman*,
251 Fed. App'x 84 (3d Cir. 2007) .................... 15

*Brant v. United States*,
No. 3:12-cv-1355 (VLB), 2013 WL 12419884
(D. Conn. Jan. 15, 2013) ................................. 14

*Carlson v. Green*,
446 U.S. 14 (1980) ................................... 10, 17

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006) .............................. 40

*Daniels v. United States*,
No. 11-5009, 2011 WL 13202357 (6th Cir. Oct. 7, 2011) ........................................................ 15

*Davis v. Goord*,
320 F.3d 346 (2d Cir. 2003) ............................ 27

*Del Raine v. Williford*,
32 F.3d 1024 (7th Cir. 1994) .......................... 36

*Duverge v. United States*, No. 3:10cv1922 (JGM)
2014 WL 1366194 (D. Conn. Apr. 7, 2014).... 18

*Exxon Mobil Corp. & Affiliated Cos. v. Commissioner*,
689 F.3d 191 (2d Cir. 2012) .............................. 9

*FDIC v. Meyer*,
510 U.S. 471 (1994) ....................................... 11

*Field Day, LLC v. County of Suffolk*,
463 F.3d 167 (2d Cir. 2006) ............................ 25

*Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*,
865 F.2d 513 (2d Cir. 1989) ............................ 40

*Finnegan v. Univ. of Rochester Med. Center*,
180 F.R.D. 247 (W.D.N.Y. 1998) .................... 19

*Fletcher v. University Hosps. Of Cleveland*,
897 N.E.2d 147 (Ohio 2008) ........................... 22

*Freeman v. United States*,
166 F. Supp. 3d 215 (D. Conn. 2016) .. 6, 14, 23, 35

*Gallinari v. Kloth*,
148 F. Supp. 3d 202 (D. Conn. 2015) ....... 14, 34

*Gallivan v. United States*,
943 F.3d 291 (6th Cir. 2019) ............. 16, 17, 22

*Gerena v. Korb*,
617 F.3d 197 (2d Cir. 2010) ............................ 31

*Hallums v. Dep't of Veterans Affairs*,
No. 3:15-cv-841 (VAB), 2017 WL 1230841 (D. Conn. Mar. 30, 2017) ............................... 14, 23

*Hanna v. Plumer*,
380 U.S. 460 (1965) ....................................... 24

*Hernandez v. United States*,
939 F.3d 191 (2d Cir. 2019) ............................ 11

*Hill v. SmithKline Beecham Corp.*,
393 F.3d 1111 (10th Cir. 2004) ................ 14, 15

*Himes v. United States*,
645 F.3d 771 (6th Cir. 2011) .......................... 10

*In re Nat'l Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003) .......................... 43

*Iragorri v. United Tech. Corp.*,
274 F.3d 65 (2d Cir. 2001)............................... 39

*Jones v. Correctional Medical Services, Inc.*,
845 F. Supp. 2d 824 (W.D. Mich. 2012).. 21, 23, 24

*Kahane v. Carlson*,
527 F.2d 492 (2d Cir. 1975)............................ 41

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3rd Cir. 1974) .......................... 43

*Kuck v. Danaher*,
600 F.3d 159 (2d Cir. 2010).............................. 9

*Lane v. Pena*,
518 U.S. 187 (1996) ....................................... 10

*Lead Indus. Ass'n., Inc. v. Occupational Safety & Health Admin.*,
610 F.2d 70 (2d Cir. 1979)............................. 42

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ......................................... 3

*Lewis v. Casey*,
518 U.S. 343 (1996) ................................. 26, 27

*Liggon-Redding v. Estate of Sugarman*,
659 F.3d 258 (3d Cir. 2011)............................ 23

*Liranzo v. United States*,
690 F.3d 78 (2d Cir. 2012) .............................. 11

*Littlepaige v. United States*,
528 Fed. App'x 289 (4th Cir. 2013) ................ 15

*Lopez v. Brady*,
No. 4:CV-07-1126, 2008 WL 4415585 (M.D. Pa. Sept. 25, 2008) ................................................ 19

*Malik v. Lavalley*,
994 F.2d 90 (2d Cir. 1993) .............................. 35

*Mallard v. U.S. Dist. Court for S. Dist. of Iowa*,
490 U.S. 296 (1989) ........................................ 34

*Mathison v. United States*,
44 Fed. App'x 27 (8th Cir. 2002) .................... 15

*Morgan v. Hartford Hosp.*,
21 A.3d 451 (Conn. 2011) ............ 12, 18, 20, 21

*Murray v. Giarratano*,
492 U.S. 1 (1989) ............................................ 26

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1955) .......................................... 39

*Richards v. United States*,
369 U.S. 1 (1962) ............................................ 11

*Romandette v. Weetabix Co., Inc.*,
807 F.2d 309 (2d Cir. 1986) ................ 32, 33, 36

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........................................ 16

*Shields v. United States*,
No. 3:18-cv-1655 (JAM), ___ F. Supp. 3d. ___, 2020 WL 497644 (D. Conn. Jan. 31, 2020)... 14, 17, 20, 23, 24

*Slocum v. Dep't of Veterans Affairs*,
No. 3:13-cv-501 (SRU), 2014 WL 4161985 (D. Conn. Aug. 19, 2014) ...................................... 14

*Smith v. United States*,
498 Fed. App'x. 120 (3d Cir. 2012)................. 15

*SongByrd, Inc. v. Estate of Grossman*,
206 F.3d 172 (2d Cir. 2000)...................... 40, 43

*Stanley v. United States*,
321 F. Supp. 2d 805 (N.D.W. Va. 2004)......... 24

*Starnes v. McGuire*,
512 F.2d 918 (D.C. Cir. 1974) ........................ 41

*Swails v. United States*,
406 Fed. App'x 124 (9th Cir. 2010).......... 15, 19

*Telkamp v. Vitas Healthcare Corp. Atl.*,
No. 3:15-CV-726 (JCH), 2016 WL 777906 (D. Conn. Feb. 29, 2016)....................................... 14

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
162 F.3d 724 (2d Cir. 1998)............................ 18

*Trierweiler v. Croxton & Trench Holding Corp.*,
90 F.3d 1523 (10th Cir. 1996) ........................ 23

*United States v. Desposito*,
704 F.3d 221 (2d Cir. 2013)............................ 25

*United States v. Kwai Fun Wong*,
575 U.S. 402.................................................... 10

*United States v. MacCollom*,
426 U.S. 317 (1976) ....................................... 35

*United States v. Reynolds*,
345 U.S. 1 (1953) ........................................... 20

*United States v. Sherwood*,
312 U.S. 584 (1941) ................................... 9, 17

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ....................................... 42

*Van Dyke v. United States*,
457 Fed. App'x 721 (10th Cir. 2012)........ 14, 20

*VanDiver v. Martin*,
304 F. Supp. 2d 934 (E.D. Mich. 2004).......... 33

*Votre v. County Obstetrics and Gynecology Group, P.C.*,
966 A.2d 813 (Conn. App. Ct. 2009) .. 12, 19, 20

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980) ........................................ 20

*Walker v. Sumner*,
14 F.3d 1415 (9th Cir. 1994) .......................... 36

*Wright v. Lewis*,
76 F.3d 57 (2d Cir. 1996).......................... 30, 32

*Zapata v. City of New York*,
502 F.3d 192 (2d Cir. 2007)............................ 32

*Zigmund v. Wynne*,
189 F.3d 462 (2d Cir. 1999)...................... 27, 28

**Statutes**

28 U.S.C. § 1291 ................................................ xiv

28 U.S.C. § 1346.......................... xiv, 7, 10, 16, 17

28 U.S.C. § 1404..........................................*passim*

28 U.S.C. § 1915......................... 30, 32, 33, 34, 35

28 U.S.C. § 2671................................................ xiv

28 U.S.C. § 2674..........................................*passim*

Conn. Gen. Stat. § 52-190a.........................*passim*

## Rules

Fed. R. App. P. 4 ............................................. xiv

Fed. R. Civ. P. 4 .........................................*passim*

Fed. R. Civ. P. 8 .................................... 20, 21, 22

Fed. R. Civ. P. 9 .................................... 20, 21, 22

Fed. R. Civ. P. 11 ....................................... 22, 23

Fed. R. Civ. P. 12 ....................................... 18, 23

Fed. R. Civ. P. 26 ....................................... 23, 24

Fed. R. Civ. P. 61 .............................................. 43

## Other Authorities

Pub.L.104-134 (April 26, 1996) ......................... 34

15 Wright & Miller, Fed. Prac. & Proc. § 3848
(4th ed. 2019)..................................................... 41

Wright & Miller, 8. Fed. Proc., L. Ed. § 20:371
(March 2020) ..................................................... 32

## Statement of Jurisdiction

The United States District Court for the District of Connecticut (Thompson, J.) had subject matter jurisdiction over this civil case under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, pursuant to 28 U.S.C. § 1346(b). Final judgment on all claims entered in favor of the United States on November 15, 2019. Government Appendix ("GA") 4; GA42. On December 9, 2019, the plaintiff filed a timely notice of appeal pursuant to Fed. R. App. P. 4(a)(1)(B). GA5; GA43. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## Statement of Issues
## Presented for Review

I. Whether the district court properly dismissed the medical malpractice complaint under the Federal Tort Claims Act because the plaintiff failed to meet the substantive requirement of Connecticut law that he submit a "good faith" certificate with his complaint.

II. Whether Connecticut's good-faith-certificate requirement prevents *pro se* federal prisoners from having meaningful access to the courts when those prisoners are in no worse position than any other *pro se* plaintiff and the United States is not responsible for any burden on the *pro se* litigants.

III. Whether the district court abused its discretion by declining to obtain a good-faith certificate for the plaintiff or to extend the time for the plaintiff to serve his complaint by an additional 630 days.

V. Whether the district court abused its discretion by transferring this case from the Southern District of New York to Connecticut where the injury occurred in Connecticut, any evidence or witnesses are located in Connecticut, the case is governed by Connecticut substantive law, and the plaintiff was incarcerated in Connecticut at the time of the transfer.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 19-4092

ROYCE CORLEY,
*Plaintiff-Appellant,*

-vs-

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

**BRIEF FOR THE UNITED STATES OF AMERICA**

## Preliminary Statement

Royce Corley filed this medical malpractice action claiming that he suffered dental injuries during the course of several appointments while incarcerated by the Bureau of Prisons at FCI Danbury. The district court dismissed his complaint, however, because Corley failed to include with his complaint a good-faith certificate with an opinion from a similar medical provider, as required by Connecticut law.

On appeal, Corley argues that the good-faith-certificate requirement is a procedural requirement of Connecticut law that should not apply in federal court. As explained below, however, enforcement of the good-faith-certificate requirement is mandated by the limited waiver of sovereign immunity in the Federal Tort Claims Act. Enforcement of that requirement ensures that the United States is liable to the same extent as a private Connecticut litigant.

Corley's remaining claims on appeal also fail. Connecticut's good-faith-certificate requirement does not place an undue burden on access to the courts, and the district court appropriately exercised its discretion to deny (1) Corley's request to appoint a physician to provide the required certificate, and (2) Corley's alternative request for an extension of time to complete service until after his scheduled release from prison. Finally, the district court appropriately transferred this case from the Southern District of New York to Connecticut.

The district court's judgment should be affirmed.

## Statement of the Case

Plaintiff-Appellant Royce Corley filed this action on May 21, 2018 in the United States District Court for the Southern District of New York. GA2. The Chief Judge of that court (McMahon, C.J.) transferred the case to the District of Connecticut on May 24, 2018. GA2.

On November 12, 2019, the district court (Thompson, J.) dismissed Corley's Federal Tort Claims Act medical malpractice claims against the United States. GA4. Final judgment entered on November 15, 2019, GA4, and Corley filed a timely notice of appeal on December 9, 2019, GA5.

### A. Factual background

This case concerns injuries Corley alleges he suffered over the course of several dental appointments during his incarceration at FCI Danbury. GA16-17. For the purposes of this appeal, the following facts from Corley's complaint are assumed to be true. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

During a dental cleaning on November 14, 2016, Corley suffered a damaged filling on a wisdom tooth and a broken cap on an incisor, due to "carelessness" and "unnecessary rough-handling" by a dental hygienist. GA16. The cap on his incisor fell off a few weeks later. GA17. Corley suffered further injury to these same teeth during

several subsequent appointments through March 13, 2017, at which time a dentist extracted his wisdom tooth. GA17. After the extraction, which left pieces of broken tooth in his gums, Corley suffered pain, bleeding, infection, difficulty eating and sleeping, and bad breath. GA17. Corley alleges that the United States, through its employees, was negligent and breached the applicable standard of care. GA18-19.

### B. Procedural background

#### 1. Corley's federal suit

Corley filed his original complaint on May 21, 2018, alleging medical malpractice "under Connecticut law" pursuant to the Federal Tort Claims Act ("FTCA") based on the dental care he received while incarcerated at FCI Danbury. GA6. After his case was transferred to Connecticut, Corley filed an amended complaint naming the United States as a defendant. GA16. For both complaints, Corley did not attach a good-faith certificate with a letter from a similar medical provider as required by Connecticut General Statutes § 52-190a.

On March 19, 2019, the United States moved to dismiss the complaint for failure to comply with § 52-190a. GA3. Two weeks later, Corley moved to amend his complaint to add additional medical malpractice claims relating to four ad-

ministrative claims that were denied by the Bureau of Prisons. GA21-31. These new claims involved gastro-intestinal issues rather than dental issues. GA21-31. The United States objected to Corley's motion to amend his complaint on several grounds, including that Corley had not provided a § 52-190a certificate relating to these new gastro-intestinal claims. GA3.

While the government's motion to dismiss was pending, Corley filed two identical documents—titled "Opposition to Motion to Dismiss and Cross-Motion for Person Specially Appointed by the Court and/or Alternatively to Extend Service of Process"—in which he argued against dismissal of his complaint for failure to comply with § 52-190a. GA3 (Dock. ##25, 26); GA32. Corley argued both that § 52-190a did not apply in federal court and that it was unconstitutional as applied to prisoners. GA33-35. In addition, he requested that the district court hire a physician to provide the required opinion letter, GA35, or, alternatively, extend the time under Rule 4(m) for him to comply with § 52-190a through January 11, 2021, which was 90 days after his then-scheduled release from prison. GA36.

### 2. The district court's order granting the motion to dismiss

On November 12, 2019, the district court issued an order granting the government's motion to dismiss Corley's amended complaint for failure

to submit a good-faith certificate as required by Conn. Gen. Stat. § 52-190a. GA4; GA37.

The district court noted the limited waiver of sovereign immunity in the FTCA, and the mandate that the United States may only be liable "'in the same manner and to the same extent as a private individual under like circumstances.'" GA38-39 (quoting 28 U.S.C. § 2674). Because liability under the FTCA turns on state law, GA39, the court looked to Connecticut law, which requires actions alleging medical malpractice to be accompanied by a good faith certificate. GA39 (citing Conn. Gen. Stat. § 52-190a). The district court further noted that the failure to comply with § 52-190a amounted to insufficient service of process. GA39 (citing *Freeman v. United States*, 166 F. Supp. 3d 215, 220 (D. Conn. 2016)). The district court concluded that because Corley's claims sounded in medical malpractice, and because he failed to comply with the requirements of Conn. Gen. Stat. § 52-190a, his complaint must be dismissed. GA40.

Turning to the motion to amend seeking to add new medical malpractice claims, the district court denied that motion, concluding that the proposed amendment would be futile because the new claims suffered from the same defect, namely, Corley had failed to comply with § 52-190a. GA40-41. The court denied Corley's "Motion for Person Specially Appointed by the Court and/or Alternatively to Extend service of process" as moot. GA4.

## Summary of Argument

I. The district court properly dismissed Corley's complaint for failure to submit a good-faith certificate, as required by Conn. Gen. Stat. § 52-190a. This provision applies in federal court to implement the FTCA's limited waiver of sovereign immunity. Under that waiver, the United States is only liable to the same extent as a private litigant in state court. 28 U.S.C. §§ 1346, 2674. Depriving the United States of the protections of § 52-190a would result in it being liable to a different extent than a private individual. Furthermore, even if § 52-190a is understood as a procedural standard, there is no conflict with the Federal Rules of Civil Procedure that precludes application of that standard in FTCA cases.

II. Section 52-190a is not unconstitutional as applied to federal *pro se* prisoners. The requirements in § 52-190a do not meaningfully restrict a prisoner's access to the courts because prisoners are in the same position as every other *pro se* litigant—they have to obtain an opinion from a doctor in the relevant specialty. Further, Corley has not alleged that the United States was responsible for impeding his access to the courts.

III. The district court did not abuse its discretion in declining to grant Corley's request for the court to hire a physician to issue the required certificate, or in the alternative, to provide him with

a 630-day extension to complete service of the certificate. Corley's unprecedented claim that his *in forma pauperis* status shifts his § 52-190a obligations onto the district court or the United States Marshals is unsupported. He has offered no "good cause" to excuse his § 52-190a obligations or the failure of service in this case, much less "good cause" sufficient to warrant a 630-day extension of the service deadline. Indeed, Corley has failed to show that he ever even tried to procure a good-faith certificate, or made any effort at all towards that endeavor.

IV. The district court did not abuse its discretion under 28 U.S.C. § 1404(a) to transfer this case from the Southern District of New York to the District of Connecticut. The transferring court considered the appropriate venue factors, which weighed in favor of the transfer at the time Corley sought it: the underlying events, witnesses and evidence, and Corley himself were all located in Connecticut. In any event, Corley cannot show that the result in this case—its dismissal for failure to comply with Conn. Gen. Stat. § 52-190a—would have been different absent the transfer.

# Argument

## I. The district court properly dismissed Corley's FTCA complaint because he failed to comply with a substantive condition for instituting and maintaining a medical malpractice claim under Connecticut law.

### A. Relevant facts

The facts pertinent to consideration of this issue are set forth in the Statement of the Case above.

### B. Governing law and standard of review

This Court reviews *de novo* questions of law arising from the grant of a motion to dismiss. *Kuck v. Danaher*, 600 F.3d 159, 162 (2d Cir. 2010).

The United States is immune from suit except where it has explicitly waived that immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Where sovereign immunity has been waived, the terms of the waiver "define th[e] court's jurisdiction to entertain the suit." *Id.* Moreover, "'a waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text,' and 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Exxon Mobil Corp. & Affiliated Cos. v.*

*Commissioner*, 689 F.3d 191, 201 (2d Cir. 2012) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Subject to exceptions not relevant here, the FTCA waives sovereign immunity for tort claims against the United States arising from the actions of federal employees. It provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. *See also United States v. Kwai Fun Wong*, 575 U.S. 402, 419 (2015 (explaining that "when defining substantive liability for torts, the [FTCA provides] that United States is accountable 'in the same manner and to the same extent as a private individual'") (quoting § 2674); 28 U.S.C. § 1346(b)(1) (providing for federal district court jurisdiction over personal injury claims arising from negligent or wrongful acts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred").

In short, an FTCA claim "exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." *Carlson v. Green*, 446 U.S. 14, 23 (1980); *see also Himes v. United States*, 645 F.3d 771, 780 (6th Cir. 2011) ("[T]he FTCA sub-

jects the United States to liability 'to the same extent' as an ordinary person; it does not expose the United States to broader liability.").

To "determine whether the government is liable for the torts of its employees," the "FTCA directs courts to consult state law[.]" *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). *See also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA."); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (same). Further, the Supreme Court has held that the FTCA "requires application of the whole law of the State where the act or omission occurred." *Richards v. United States*, 369 U.S. 1, 11 (1962).

Under Connecticut law (the relevant substantive law here), a party may not file a medical malpractice action without first making a "reasonable inquiry . . . to determine that there are grounds for a good faith belief that there has been negligence . . . . ." Conn. Gen. Stat. § 52-190a. To implement this requirement, the statute requires the party (or the party's attorney) to include with the complaint "a certificate" that this "reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant[.]" Further, "[t]o show the existence of such good faith, [the party or his attorney] shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be

evidence of medical negligence and includes a detailed basis for the formation of such opinion." This requirement is designed to "prevent the filing of frivolous malpractice actions." *Morgan v. Hartford Hosp.*, 21 A.3d 451, 457 (Conn. 2011) (citing *Bennett v. New Milford Hosp., Inc.*, 12 A.3d 865 (Conn. 2011)).

In 2005, Connecticut amended § 52-190a to add subsection (c), which provides a remedy (*i.e.*, dismissal of the action) for failure to comply with the certificate requirement. *Votre v. County Obstetrics and Gynecology Group, P.C.*, 966 A.2d 813, 820-21 (Conn. App. Ct. 2009).

### C. Discussion

#### 1. Conn. Gen. Stat. § 52-190a is a substantive defense for medical malpractice actions that must be available for actions against the United States to ensure compliance with the limited waiver of sovereign immunity in the FTCA.

Consistent with the FTCA's waiver of sovereign immunity, the district court properly dismissed Corley's complaint because he did not satisfy Connecticut law governing medical malpractice actions. Under Conn. Gen. Stat. § 52-190a, before a medical malpractice action may be filed, the party must make a "reasonable inquiry" to determine that there is "a good faith belief that

there has been negligence[.]" Because the failure to include a certificate establishing this inquiry is a substantive defense to a medical malpractice action under Connecticut law, and because the United States is only liable "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, the United States is entitled to enforce this defense under the FTCA.

Given these principles, the district court properly dismissed Corley's complaint to enforce the strict waiver of sovereign immunity in the FTCA. This point is best understood with an example. A plaintiff alleges malpractice during treatment at both a private hospital and a federal hospital. He brings a medical malpractice claim against the private hospital in state court and an FTCA claim against the United States in federal court. If he fails to conduct the reasonable inquiry and provide the requisite § 52-190a certificate in state court, his claim against the private defendant will be dismissed. Thus, to ensure that the United States is only held liable "to the same extent" as the private hospital in state court, the same action would have to be dismissed in federal court. To hold otherwise, as the Tenth Circuit explained when considering an analogous certificate requirement under Colorado law, "would place [the United States] in a differently situated position than private parties defending against professional negligence claims in Colorado, thereby undermining the conditions precedent to

the United States' waiver of sovereign immunity in the FTCA." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004).

Notably, and consistent with these principles, federal districts courts in Connecticut regularly enforce § 52-190a in FTCA cases. *See, e.g.*, *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 207 (D. Conn. 2015); *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at *8 (D. Conn. Feb. 29, 2016); *Hallums v. Dep't of Veterans Affairs*, No. 3:15-cv-841 (VAB), 2017 WL 1230841, at *3-4 (D. Conn. Mar. 30, 2017); *Freeman*, 166 F. Supp. at 220; *Slocum v. Dep't of Veterans Affairs*, No. 3:13-cv-501 (SRU), 2014 WL 4161985, at *1 (D. Conn. Aug. 19, 2014); *Brant v. United States*, No. 3:12-cv-1355 (VLB), 2013 WL 12419884, at *2 (D. Conn. Jan. 15, 2013); *but see Shields v. United States*, No. 3:18-cv-1655 (JAM), ___ F. Supp. 3d. ___, 2020 WL 497644 (D. Conn. Jan. 31, 2020) (declining to apply § 52-190a and denying motion to dismiss).

These decisions, and the district court's ruling here, align with the majority of Circuit Courts that have addressed this issue in cases involving analogous certificate requirements in other states. *See, e.g.*, *Hill*, 393 F.3d at 1117 ("[W]e conclude that the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA."); *Van Dyke v. United States*, 457 Fed. App'x 721, 726-27

(10th Cir. 2012) (Wyoming medical review requirement applies in FTCA case); *Littlepaige v. United States*, 528 Fed. App'x 289, 292-93 (4th Cir. 2013) (affirming dismissal of FTCA complaint in North Carolina where plaintiff failed to attach expert certification requirement as required by North Carolina law); *Smith v. United States*, 498 Fed. App'x. 120, 121-22 (3d Cir. 2012) (Pennsylvania rule requiring certificate of merit in medical malpractice actions was substantive and applied in FTCA case); *Bramson v. Sulayman*, 251 Fed. App'x 84, 86 n.2 (3d Cir. 2007) (New Jersey affidavit of merit requirement applies in FTCA case); *Mathison v. United States*, 44 Fed. App'x 27, 29 (8th Cir. 2002) (Minnesota affidavit requirement applies in FTCA case); *Daniels v. United States*, No. 11-5009, 2011 WL 13202357, at *2 (6th Cir. Oct. 7, 2011) (Tennessee good faith certificate requirement applies in FTCA case); *Swails v. United States*, 406 Fed. App'x 124, 125-26 (9th Cir. 2010) (Nevada affidavit requirement applies in FTCA case).

The Tenth Circuit's reasoning in *Hill* is instructive. In that case, the Court held that a Colorado statute, which required plaintiffs bringing professional negligence claims to file a certificate of review, applied in an FTCA case. 393 F.3d at 1116-18. The Court noted that waivers of sovereign immunity must be narrowly construed, and because a Colorado plaintiff needs a certificate of review in order to sue a licensed professional,

"[l]ikewise, the United States can only be liable under 'like circumstances' . . . ." *Id.* at 1117-18. As the Court explained, to hold otherwise "would undermine Congress's limited intent in waiving immunity under the FTCA[.]" *Id.* at 1118.

The Sixth Circuit's decision to the contrary in *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), is distinguishable. In *Gallivan*, the Court concluded that an Ohio Rule of Civil Procedure requiring an affidavit of merit conflicted with the Federal Rules of Civil Procedure and therefore did not apply. 943 F.3d at 293-94. However, in so deciding, it gave little attention to the FTCA's limited waiver of sovereign immunity. Instead, the Court's consideration of the Ohio requirement began and ended with its application of the conflict analysis set forth in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See Gallivan*, 943 F.3d at 293-94.

The framework set forth in *Shady Grove*, a diversity jurisdiction case, is misplaced in this federal question jurisdiction action. In this case, there is no need to perform a conflict analysis; the primary inquiry is whether the United States has waived its sovereign immunity. 28 U.S.C. §§ 1346 and 2674. Focusing on an analysis of whether there is a conflict between a state rule of civil procedure and a federal rule of civil procedure overlooks these express provisions of the FTCA. Thus, when the *Gallivan* Court framed the "first question" it must consider as: "does someone need an

affidavit of merit to state a claim for medical negligence," 943 F.3d at 293, it asked the wrong question. The primary question in this FTCA case should be: if the screening statute is not enforced, would the United States be liable to a different extent than a private litigant? If the answer is yes, the United States has not waived its sovereign immunity over that claim. *Sherwood*, 312 U.S. at 586-87; *Carlson*, 446 U.S. at 23. Accordingly, the rationale in *Gallivan* is not persuasive.[1]

At bottom, § 52-190a is a statutory defense to medical malpractice actions under Connecticut law. Depriving the United States of this defense would result in it being liable to a different extent than a private litigant in Connecticut state court in violation of the FTCA. 28 U.S.C. §§ 1346 and

---

[1] For similar reasons, the district court's decision in *Shields v. United States*, No. 3:18-cv-1655 (JAM), ___ F. Supp. 3d. ___, 2020 WL 497644 (D. Conn. Jan. 31, 2020), which relied heavily on *Gallivan*, is not persuasive. In *Shields*, the court found that § 52-190a does not apply in a FTCA case because, according to the court, that provision is a procedural requirement and does not bear on the extent to which a private party is substantively liable to another. *Shields*, 2020 WL 497644, at *5-9. This conclusion, like the *Gallivan* Court's similar conclusion, overlooks the substantive standard set out in the FTCA's waiver of sovereign immunity. Moreover, a defendant cannot be liable if a plaintiff cannot bring a claim in the first place. Section 52-190a is substantive law, not a procedural mechanism.

2674. Accordingly, it should be enforced in this FTCA action.

#### 2. Corley's counter-arguments are not persuasive.

Corley's central counter-argument is that because Connecticut courts understand § 52-190a to implicate personal jurisdiction, this is a procedural rule that should not be enforced in a case under the FTCA.[2] In support of this argument, he points to *Morgan v. Hartford Hosp.*, 21 A.3d 451 (Conn. 2011). In *Morgan*, the Connecticut Supreme Court held that the good-faith inquiry requirement, as implemented through a requirement of an attachment to the complaint, was a

[2] Corley also argues that the government waived its insufficiency-of-service defense by accepting service under Rule 4. However, challenges to service of process are properly made in a motion pursuant to Fed. R. Civ. P. 12(b)(5). Waiver of this defense only occurs if it is omitted in an initial Rule 12 motion, or if a defendant fails to raise it in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998). In fact, in *Duverge v. United States*, No. 3:10cv1922 (JGM), 2014 WL 1366194 (D. Conn. Apr. 7, 2014)—which Corley cites for support—the court held that the United States had waived the § 52-190a defense because it filed an answer without raising it. Here, however, the government raised Corley's failure to comply with § 52-190a in its first pleading; there was no waiver.

pleading requirement that went to the sufficiency of the process and had to be raised in a timely motion to dismiss upon penalty of waiver. Further, the Court concluded that the failure to comply with § 52-190a results in dismissal without prejudice based on personal jurisdiction rather than subject matter jurisdiction. *Id.* at 459-60.

As a preliminary matter, that a dismissal for failure to comply with § 52-190a results in a dismissal without prejudice does not mean that the requirement is not a substantive defense to liability under Connecticut law. Indeed, other federal courts have determined that similar state medical malpractice screening requirements are substantive even where the dismissal for failure to comply is without prejudice. *See, e.g.*, *Swails*, 406 Fed. App'x at 125-26 (Nevada); *Lopez v. Brady*, No. 4:CV-07-1126, 2008 WL 4415585, at *13-14 (M.D. Pa. Sept. 25, 2008) (Pennsylvania); *Finnegan v. Univ. of Rochester Med. Center*, 180 F.R.D. 247, 249 (W.D.N.Y. 1998) (holding that New York certificate of merit statute applied in diversity action, and required that court grant plaintiff thirty days to comply before dismissing action).

More fundamentally, however, § 52-190a should apply in FTCA actions because it implements a substantive limitation of Connecticut law. Under Connecticut law, the certificate requirement must be satisfied or the medical malpractice claim must be dismissed. *Votre*, 966 A.2d at 820-23. The good-faith inquiry and certificate

requirement were specifically designed with a substantive goal: to deter frivolous medical malpractice claims. *Morgan*, 21 A.3d at 457. And in 2005, the Connecticut legislature revisited § 52-190a and amended the statute to provide defendants with a remedy in the event a plaintiff failed to comply. *Votre*, 966 A.2d 813, 820-21. Thus, the purpose behind the statute was not merely procedural. *See Van Dyke*, 457 Fed. App'x at 726 (requiring compliance with state statute in FTCA case furthered Wyoming's goal of preventing medical malpractice cases where facts do not permit at least reasonable inference of malpractice). In other words, even though the requirement is enforced with procedural tools, because it implements a substantive limitation on medical malpractice actions, it is a defense that must be available for the United States in a FTCA case.

To be sure, the Federal Rules of Civil Procedure apply in FTCA cases, *see United States v. Reynolds*, 345 U.S. 1, 6 (1953), but there is no conflict between § 52-190a and those rules. *But see Shields*, 2020 WL 497644, *6-9. Both the Federal Rules and § 52-190a can "exist side by side . . . each controlling its own intended sphere of coverage without conflict." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980).

*Rule 8 and Rule 9*: Both Rules 8 and 9, which dictate the content of a pleading and the level of specificity that is required respectively, can co-exist with § 52-190a.

Turning first to its relationship with Rule 8, § 52-190a's good faith certificate is attached to the complaint, but it is also accurately described as "akin to an essential allegation to support a cause of action[.]" *Morgan*, 21 A.3d at 457 (internal quotations omitted). Further, under Connecticut law, this requirement has been construed as a component of service of process. *Id.* at 459. Section 52-190a does not require any change to, or impose any further requirement on, the contents of the complaint. Rather, the certificate with opinion letter must be included with the complaint for service.

Rule 9 provides that certain limited matters must be pled with heightened specificity. However, as *Morgan* makes clear, § 52-190a does not impose a heightened pleading requirement which could arguably clash with Rule 9. It imposes, rather, a substantive pre-condition to filing a medical malpractice action. *Morgan*, 21 A.3d at 457-59. *See also Jones v. Correctional Medical Services, Inc.*, 845 F. Supp. 2d 824, 855-56 (W.D. Mich. 2012) (finding that Michigan's affidavit requirement has "little in common with pleadings aside from [its] being filed along with the complaint," and explaining that to find a conflict with Rules 8 and 9 would require disregarding "the Supreme Court's instructions to read the Rules to avoid conflict," and would "actually expand the Rules' domain beyond their plain meaning to

cover nonbinding, factual statements made by a hired expert outside of the formal pleadings”).

When analyzed with Rule 8 and Rule 9, Connecticut’s statute is additionally distinguishable from the Ohio affidavit rule at issue in *Gallivan*. As the Sixth Circuit noted, the Ohio Supreme Court had expressly held that the Ohio affidavit rule was a “‘heightened pleading requirement’” for medical malpractice claims, thus directly conflicting with Rule 9’s list of cases subject to heightened pleading requirements. *See Gallivan*, 943 F.3d at 296 (quoting *Fletcher v. University Hosps. Of Cleveland*, 897 N.E.2d 147, 150 (Ohio 2008)). Section 52-190a, by contrast, while enforced through a procedural certificate requirement, is not a heightened pleading requirement but rather a substantive limit on the filing of medical malpractice actions. Thus, unlike with the Ohio rule, there is no conflict between Rules 8 and 9 and § 52-190a.

*Rule 11*: Similarly, there is no conflict between § 52-190a and Rule 11 which governs representations to the court and authorizes sanctions in certain circumstances. Rule 11 targets the attorney; *see* Fed. R. Civ. P. 11(c) (providing for sanctions against the attorney), while § 52-190a penalizes the plaintiff for failing to comply by requiring dismissal of the complaint. In addition, § 52-190a is narrow and only applies to medical negligence actions—evidencing a specific legislative intent to curtail frivolous lawsuits. Section 52-190a does

not limit the court's ability to impose sanctions under Rule 11. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 263 (3d Cir. 2011) (finding no conflict between Pennsylvania affidavit rule and Rule 11 because each can "co-exist"; each rule "controls its own intended area of influence without any conflict"); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996) (no conflict between Rule 11 and Colorado review statute); *Jones*, 845 F. Supp. 2d at 856 (no conflict between Rule 11 and Michigan requirement); *but see Shields*, 2020 WL 497644, at *8 (concluding that § 52-190a conflicted with Rule 11).

*Rule 12:* Nor is there a conflict between § 52-190a and Rule 12(b) which governs the permissible motions in response to a plaintiff's complaint. Following Connecticut law, district courts in the District of Connecticut have repeatedly held that failure to comply with § 52-190a is a defect in service depriving the court of personal jurisdiction. *See e.g., Freeman*, 166 F. Supp. 3d at 219-21; *Hallums*, 2017 WL 1230841, at *3-4.

*Rule 26*: Section 52-190a also does not conflict with Rule 26 governing expert disclosures. The statutory requirement, on its face, is a pre-filing requirement. Rule 26, on the other hand, governs the content and timing of expert disclosures after suit is filed. At most, the statute requires a new type of document to be filed in addition to the normal expert-report procedure. In fact, in practice,

a plaintiff is free to disclose different experts instead of the physician providing the initial opinion letter. There is no conflict. *See Stanley v. United States*, 321 F. Supp. 2d 805, 808 (N.D. W. Va. 2004) (no conflict between West Virginia prefiling requirement and Rule 26); *Jones*, 845 F. Supp. 2d at 856-57 ("Michigan's statute, on the other hand, does not affect the court's discretionary power over discovery issues; it simply requires a new type of filing in addition to the normal expert-report procedures.").

*Rule 4:* Finally, § 52-190a does not conflict with Rule 4 which details the manner and method of service. In *Hanna v. Plumer*, 380 U.S. 460, 470 (1965), a diversity case, the Supreme Court rejected application of a state service of process rule that required in-hand service because it directly clashed with Rule 4 which does not require in-hand service. *Hanna* is distinguishable. Here, § 52-190a does not change the manner or methods of service prescribed by Rule 4. Rather, it merely requires an additional document be included when the complaint is served. There is no conflict between § 52-190a and Rule 4. *But see Shields*, 2020 WL 497644, at *8 (citing *Hanna* and finding conflict between § 52-190a and Rule 4).

In sum, because Connecticut's good-faith-certificate requirement can coexist with the Federal Rules of Civil Procedure, there is no conflict. Section 52-190a should apply in FTCA actions.

## II. Section § 52-190a does not deprive *pro se* prisoners from having meaningful access to the courts.

### A. Relevant facts

In opposition to the United States' motion to dismiss, Corley argued, in part, that § 52-190a was unconstitutional as applied to federal prisoners. GA34-35. In particular, he argued that it places an unreasonable burden on prisoners to request a good-faith certificate from their adversaries (*i.e.*, BOP), that BOP has no legal obligation to provide a certificate to permit prisoners to sue them, and that BOP has no obligation to transport prisoners for an examination to support the requirement. GA34.

The district court did not separately address these arguments when it dismissed Corley's complaint for failure to submit a good faith certificate as required by § 52-190a. GA4; GA41.

### B. Governing law and standard of review

This Court reviews *de novo* challenges to the constitutionality of statutes. *United States v. Desposito*, 704 F.3d 221, 229 (2d Cir. 2013).

Although Corley describes his argument as an "as-applied" challenge to § 52-190a, he only argues about the Connecticut statute as applied to federal prisoners, not about its "application to the particular circumstances of an individual." *Field*

*Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Pla. Br. 9. Moreover, Corley does not allege that the United States somehow applied this statute to him in a different way than other individuals. In other words, Corley does not allege that the statute impacted him differently than it would any other federal or state prisoner. Thus, properly understood, Corley's claim appears to be a facial challenge arguing that § 52-190a deprives federal prisoners of meaningful access to the courts.

The Constitution protects prisoners' right of "meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *see also Lewis v. Casey*, 518 U.S. 343 (1996). This constitutional right "has been described as a consequence of the right to due process of law . . . and as an aspect of equal protection." *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989).

The meaningful-access-to-court rights described in *Bounds*, however, extends to minimum access, not ideal or even easy access. "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. The focus of *Bounds* is the right of inmates to attack their sentences and challenge the conditions of confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the

incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*; *see also Zigmund v. Wynne*, 189 F.3d 462 (2d Cir. 1999) (unpublished) ("The right to court access by inmates does not entail a right to representation in civil cases but is simply a right to such minimal resources—*e.g.*, pens, paper, research materials and postage—as are needed to prepare and file legal papers on their own behalf.").

Finally, to bring a claim for deprivation of access to the courts, a plaintiff must allege two additional elements. First, a plaintiff "must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (alternation in original, internal citations and quotation marks omitted). Second, a plaintiff must show an actual injury, which "derives ultimately from the doctrine of standing." *Lewis*, 518 U.S. at 349.

**C. Discussion**

Section 52-190a does not restrict a federal prisoner's right of access to the courts and Corley cannot demonstrate that the United States was responsible for any injury.

To begin, § 52-190 does not deny federal prisoners meaningful access to courts because in complying with the certificate requirements, federal *pro se* prisoners are no worse off than other *pro se* litigants. To be sure, § 52-190 requires a medical

malpractice plaintiff to submit an opinion from a doctor in the relevant field opining that there "appears to be evidence of medical negligence." Conn. Gen. Stat. § 52-190a. But this requirement applies to *all* malpractice plaintiffs.

Federal *pro se* prisoners are not singled out for this requirement and are in no worse position than non-incarcerated *pro se* plaintiffs. In particular, *pro se* litigants—both prisoners and non-incarcerated litigants—have to contact a doctor, provide the doctor the relevant records, pay the doctor for the review of the records (or negotiate an agreement to pay from a potential future recovery), and obtain the certificate. Similarly, neither the federal *pro se* prisoner nor the *pro se* non-incarcerated litigant have the ability to compel a doctor to provide them with help for this process. To be sure, this process may be difficult for a *pro se* litigant, whether incarcerated or not, but a prisoner is not restricted from engaging in this process. Indeed, a federal *pro se* prisoner is in no worse position than even a counseled party—save that any *pro se* litigant lacks an attorney to help him or her navigate litigation—and the constitutional right of access to the courts does not include representation in civil cases. *See, e.g., Zigmund*, 189 F.3d at 462.

Further, the United States is not responsible for any federal *pro se* prisoner's inability to comply with § 52-190a. Corley has never identified any Bureau of Prisons policies that prevent *pro se*

prisoners from complying with § 52-190a. He does not allege that BOP took, or failed to take, an action that would restrict a prisoner's right of access to the court. He does not allege, for example, that BOP restricts prisoner contact with medical professionals. Similarly, he does not allege that BOP prevents prisoners from sending medical records to outside professionals for review. Although Corley complains about the difficulty in identifying appropriate medical professionals and paying for the review, he does not explain how those difficulties are caused by BOP and not applicable to all *pro se* plaintiffs. And although Corley notes that BOP will not transport him for an outside medical opinion, § 52-190a does not require records of a medical examination and he does not allege that BOP prevents correspondence with outside medical professionals. In short, there is nothing in the record that suggests that BOP interferes at all with a prisoner's ability to file a *pro se* medical malpractice complaint.

In sum, § 52-190a applies equally to all litigants and its application to incarcerated plaintiffs does not unduly restrict a prisoner's access to the courts.

## III. Corley's *in forma pauperis* status did not excuse his failure to comply with Conn. Gen. Stat. § 52-190a or entitle him to a 630-day extension of time to complete service.

### A. Relevant facts

In Corley's opposition to the United States' motion to dismiss, Corley argued that § 52-190a should not apply in his case, but he also made two counter-requests for relief. *First*, Corley asked the district court to hire a physician to provide the opinion letter required by § 52-190a. GA35. Corley argued that the district court should appoint a physician to fulfill his § 52-190a obligations because, pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d), Corley's *in forma pauperis* status "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." GA35 (citing *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996)).

*Second*, in the alternative, Corley asked the district court to extend the time to provide a good faith certificate "until January 11, 2021 (approx. 90 days after Plaintiffs' tentative release from prison on October 11, 2020)." GA36. The number of days between May 21, 2018 (the date of the complaint) and January 11, 2021 (the requested extension date), minus the 90 days normally afforded for service, is 876 days. Similarly, the number of days between April 22, 2019 (the date

of the request itself) and January 11, 2021 is 630 days.

After the district court granted the United States' motion to dismiss, the district court denied Corley's service-of-process requests for relief as moot. GA4 (Dock. #32).

### B. Governing law and standard of review

This Court reviews a district court's decision regarding service of process issues for abuse of discretion. *Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010). A district court abuses its discretion when it: "(1) base[s] its ruling on an erroneous view of the law, (2) ma[kes] a clearly erroneous assessment of the evidence, or (3) render[s] a decision that cannot be located within the range of permissible decisions." *Id.* (internal citations and quotation marks omitted).

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. Two provisions of that Rule are at issue here.

*Rule 4(c)(3):* A *pro se* prisoner-litigant proceeding *in forma pauperis* ("IFP") is generally entitled to rely on the United States Marshals to serve papers on his behalf. *See* Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that service be made by a United States marshal . . . or by a person specially appointed by the court.

The court must so order if the plaintiff is authorized to proceed in forma pauperis . . . ."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) ("[A]n incarcerated *pro se* litigant proceeding *in forma pauperis* [is] entitled to rely on service by the U.S. Marshals."). The IFP statute similarly provides that "[t]he officers of the court shall issue and serve all process and perform all duties in [IFP] cases." 28 U.S.C. § 1915(d). This Court has stated that a plaintiff's IFP status "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." *Wright*, 76 F.3d at 59.

*Rule 4(m):* Rule 4(m) provides that an action shall be dismissed if service of the summons and complaint is not made within 90 days after the filing of the complaint, unless "good cause" excuses that failure. Fed. R. Civ. P. 4(m). The question of whether "good cause is present (and, if so, how long an extension would be appropriate) are exercises of discretion." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

Good cause under Rule 4(m) may be established, for example, if the fault for failure to serve lies with the United States Marshals serving papers on behalf of an IFP litigant under Rule 4(c)(3). *Romandette*, 807 F.2d at 311. Conversely, "if the [IFP] litigant's own inaction or dilatoriness causes the failure of timely service, the United States marshal's responsibility to effect service will not absolve the litigant of fault." Wright &

Miller, 8. Fed. Proc., L. Ed. § 20:371 (March 2020 update); *see also VanDiver v. Martin*, 304 F. Supp. 2d 934, 939-943 (E.D. Mich. 2004) (collecting cases from the Second, Fifth and Ninth Circuits in which IFP "plaintiffs' actions or inactions carried the most weight in determining whether 'good cause' was shown" under Rule 4(m)); *cf. Romandette*, 807 F.2d at 312 (district court erred in dismissing case for failure to effect service where plaintiff "had done everything in his power to comply with Rule 4").

### C. Discussion

#### 1. Corley's *in forma pauperis* status did not shift his § 52-190a obligations onto the district court or create "good cause" excusing his failure of service.

The district court did not abuse its discretion when it declined to hire an expert to complete a good-faith certificate in support of Corley's medical malpractice claim. The district court and the United States Marshals Service do not have any obligation under 28 U.S.C. § 1915(d) to research, appoint a similar health care provider, and ask that provider to prepare the required good-faith certificate under § 52-190a. That statute reads: "The officers of the court shall issue and serve process and perform all duties in [IFP] cases." 28 U.S.C. § 1915(d). In this case, the court complied

with this statute by serving the summons on the defendants. GA3. No more was required.

In his appeal, Corley argues that the "perform all duties" language encompasses a duty to procure an opinion letter under § 52-190a. Pla. Br. 10. But Corley's novel interpretation of § 1915(d) is untenable for several reasons.

First, the language of § 1915(d) dates back to the original enactment of the IFP statute in 1892. *Compare* 28 U.S.C. § 1915(d) *with* Act of July 20, 1892, ch. 209, 27 Stat. 252; *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301-03 (1989).[3] In over a century, no court has ever interpreted the IFP statute so expansively as to require court officers to assist in the substantive preparation of an IFP litigant's papers, which is what Corley asks this Court to do. *See Gallinari*, 148 F. Supp. 3d at 207 (§ 52-190a's opinion letter is "akin to a pleading"). Just as the district court is not responsible for drafting Corley's complaint, it is not responsible for procuring an opinion letter under § 52-190a. To hold otherwise would affect an unprecedented expansion of § 1915(d).

Second, a district court's appointment of a health care provider to prepare an opinion letter under § 52-190a would require an expenditure of

---

[3] Section 1915(d) was § 1915(c) until amendments to the statute in 1996. *See* Pub.L.104-134, April 26, 1996, 110 Stat 1321.

funds that Congress has not authorized. *Cf. Malik v. Lavalley*, 994 F.2d 90, 90 (2d Cir. 1993) (per curiam) (refusing to interpret 28 U.S.C. § 1915 as authorizing federal courts to waive and pay witness fees on behalf of IFP litigants, because "'the expenditure of public funds is proper only when authorized by Congress,'" quoting *United States v. MacCollom*, 426 U.S. 317, 321 (1976)).

Third, § 52-190a specifically places the responsibility for procuring the required opinion letter from a similar health care provider on Corley. Section 52-190a requires "the attorney or party filing the action" to certify that he has engaged in a "reasonable inquiry" and "there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." § 52-190a(a). To show this good faith, "the claimant or the claimant's attorney . . . shall obtain" the required opinion letter from a similar health care provider. § 52-190a(a). Because § 52-190a specifically imposes these duties on Corley, it would thwart the statute's purpose to have them shifted onto the district court, which in any event cannot possibly attest to Corley's good faith or the reasonableness of his inquiry. *See Freeman*, 166 F. Supp. 3d at 221 ("[T]he purpose of the statutory requirement . . . is to ensure that the plaintiff conducts a 'reasonable inquiry' into the basis for the claims before he initiates an action and brings a defendant into court.").

Because the IFP statute did not shift responsibility for the requirements of § 52-190a onto the district court or United States Marshals, Corley is solely responsible for the failure of service in this case. Although IFP plaintiffs are "entitled to rely on service by the U.S. Marshals," *Romandette*, 807 F.2d at 312; and the Marshals' failure to effect service can constitute constitutes good cause within the meaning of Rule 4(m), this general rule has no application here, where Corley, rather than the U.S. Marshals, is solely responsible for the defective service. *See, e.g., Del Raine v. Williford*, 32 F.3d 1024, 1030-31 (7th Cir. 1994) (IFP plaintiff could not show good cause under Fed. R. Civ. P. 4(m) when U.S. Marshal Service was not to blame for failure to serve because plaintiff's failed to give Marshal copies of his amended complaint until more than 120 days after it was filed); *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (IFP plaintiff's failure to provide U.S. Marshals with sufficient information to identify defendants amounted to failure to show cause).

**2. The district court did not abuse its discretion when it declined to grant a 630-day extension of time for Corley to obtain a good-faith certificate.**

The district court also did not abuse its discretion when it denied Corley's request for a 630-day

extension of the time to provide a good-faith certificate and complete service. Corley argued this extension was warranted because he was a *pro se* prisoner and, therefore, it was difficult and/or expensive for him to hire a doctor. GA32-36. But Corley made no effort to demonstrate to the district court what steps, if any, he had taken to comply with the good-faith certificate statute. Corley also did not make any representations as to what he would do during the extension of time. Certainly, he could have tried to contact doctors, but he did not. Instead he relied on conclusory statements about this difficulty and requested an additional 630 days to complete service, for a total of 876 days to complete service.

Corley's request was linked to his release from prison. The district court was well within its discretion under Rule 4(m), as well as its inherent authority to manage its docket, when it declined to extend the time period to perfect service until Corley was released from prison. If the district court would have reached the opposite conclusion, it would have amounted to entering a stay order until Corley was released from prison. Defendants should not be forced to wait for prisoners to be released to litigate the cases brought against them, nor should district courts be saddled with open pending cases languishing on their dockets while memories and evidence fade.

In sum, the district court properly denied Corley's motion asking the court to provide funds for

provision of a good-faith certificate, or alternatively, an extension of time to complete this task. On the record before the court, both decisions were well within the district court's discretion.

## IV. The district court properly exercised its discretion to transfer this case to Connecticut under 28 U.S.C. § 1404(a).

### A. Relevant facts

Corley filed this action on May 21, 2018 in the United States District Court for the Southern District of New York. GA6. At that time, he was incarcerated at FCI Danbury. GA6. In addition, the alleged negligent conduct occurred at FCI Danbury. GA6-8. Corley alleged that venue was proper in the Southern District of New York because he resided there prior to his incarceration. GA6.

On May 24, 2018, Chief Judge McMahon of the Southern District of New York transferred this case, *sua sponte*, to the District of Connecticut. GA2; GA12. Citing 28 U.S.C. § 1404(a), Chief Judge McMahon explained that although venue appeared proper in the Southern District of New York, she was transferring the action "'for the convenience of the parties and witnesses, in the interest of justice.'" GA13 (quoting 28 U.S.C. § 1404(a)). Among the factors supporting this transfer, Chief Judge McMahon noted that the events giving rise to Corley's claim occurred at

FCI Danbury, Corley was incarcerated at FCI Danbury, and evidence and witnesses would be located in Connecticut. GA14. The district court found these considerations outweighed Corley's choice of a New York forum, noting that "[a] plaintiff's choice of forum is accorded less deference where plaintiff does not reside in the chosen forum and the operative events did not occur there." GA14 (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)).

### B. Governing law and standard of review

This Court reviews transfer decisions under 28 U.S.C. § 1404(a) for abuse of discretion. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (a district judge has "broader" discretion in assessing a motion to transfer under § 1404(a) than when ruling on a motion to dismiss for *forum non conveniens*).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). District courts possess "broad discretion" to transfer cases under § 1404(a), and may consider factors such as: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access

to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (alteration in original, citation omitted).

"To obtain reversal of a transfer ruling (whether granting or denying transfer) after entry of a final judgment, the party urging reversal faces a formidable task." *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 (2d Cir. 2000). Specifically, Corley must show that he "lost the case because of the handicap of the transfer." *Id.* (citation omitted); *see also Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989) ("As we have said, however, such a [transfer] ruling is almost impossible to correct by review after trial.') (quotations omitted)).

**C. Discussion**

The district court did not abuse its discretion in transferring this action to the District of Connecticut. It considered the appropriate venue factors for a § 1404(a) transfer, nearly all of which supported the transfer. The district court considered that the "underlying events occurred in Danbury, Connecticut," and that "any evidence or witnesses are located in that district." GA14. Additionally, as even Corley recognized, this case was

governed by Connecticut substantive law. *See* GA6 (complaint makes allegations under Connecticut law).

The district court also appropriately considered that Corley was incarcerated at FCI Danbury, in Danbury, Connecticut at the time of the transfer. GA14. *See, e.g., Starnes v. McGuire*, 512 F.2d 918, 931 (D.C. Cir. 1974) ("The burdens and dangers involved in transporting a prisoner across long distances are, in our opinion, a significant inconvenience to the Bureau of Prisons and will normally justify transfer.").[4]

At the time of the transfer, the only considerations on the side of a New York venue were that it was Corley's chosen forum and that Corley claimed to have a New York domicile. But "[c]ourts may consider the plaintiff's choice of forum less significant in particular situations." 15 Wright & Miller, Fed. Prac. & Proc. § 3848 (4th ed. 2019). Here, the district court appropriately gave Corley's choice of a New York forum less deference when, at the time, Corley was incarcerated and physically resided in Danbury, Connecticut. For the same reason, Corley's claim to a New York domicile was entitled to less weight. *Cf. Kahane v. Carlson*, 527 F.2d 492, 494 (2d Cir. 1975)

---

[4] Although Corley is now incarcerated in Brooklyn, New York, Chief Judge McMahon properly considered Corley's place of incarceration at the time she transferred the case.

(petitioner's residence for venue purposes was where he physically resided on probation, rather than his domicile of Israel).

Finally, the district court did not abuse its discretion in acting *sua sponte*. The statute authorizes the court to act on its own, *see Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426-427 (S.D.N.Y. 2013) ("It is settled law in this jurisdiction that a court may transfer a case sua sponte . . . . "); *see also Lead Indus. Ass'n., Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (noting that the "broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte"), and the court acted quickly, thus avoiding a delay in moving the case forward.

In any event, Corley cannot demonstrate that the transfer had any effect on the outcome of the case to constitute reversible error. In other words, Corley has not shown that this case would not have been dismissed had the action remained in the Southern District of New York. The district court (Thompson, J.) dismissed Corley's action because he failed to file a good faith certificate under § 52-190a(a). GA37-41. Corley cannot establish that a judge in the Southern District of New York would have reached a different result, especially since there is no dispute that Connecticut substantive law would have been applied in either forum. GA6 (complaint makes allegations

under Connecticut law); *see Van Dusen v. Barrack*, 376 U.S. 612, 637-39 (1964) (a "change of venue under § 1404(a) generally should be . . . but a change in courtrooms" with respect to the applicable substantive law).

Corley simply cannot show that the transfer to Connecticut factored into the district court's dismissal in any respect, which is required for it to constitute reversible error. *SongByrd, Inc.*, 206 F.3d at 179 (reversal of transfer ruling requires appealing party to show it "lost the case because of the handicap of the transfer," citation omitted); *see also* Fed. R. Civ. P. 61 (harmless error rule); *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003) (reversal of adverse final judgment for improper § 1404(a) transfer requires party show "it would have won the case had it been tried in a convenient forum"); *cf. Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755-56 (3rd Cir. 1974) (reversible error might occur, "for example, in a case in which credibility of witnesses was crucial" and transfer was made "to a venue in which the critical witness on one side was beyond the reach of a subpoena").

Because Corley cannot show that his case would have escaped dismissal but for the original district court's § 1404(a) transfer order, any abuse of discretion in the transfer did not constitute reversible error.

## Conclusion

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: May 7, 2020

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

*/s/ Eric B. Miller*

ERIC B. MILLER
ASSISTANT U.S. ATTORNEY

Sandra S. Glover
Assistant United States Attorney (of counsel)

**Federal Rule of Appellate Procedure 32(g) Certification**

This is to certify that the foregoing brief complies with the 14,000-word limitation of Second Circuit Local Rule 32.1(a)(4), in that the brief is calculated by the word processing program to contain approximately 9,757 words, excluding the items listed in Federal Rule of Appellate Procedure 32(f).

*/s/ Eric B. Miller*

ERIC B. MILLER
ASSISTANT U.S. ATTORNEY

# Addendum

28 U.S.C. § 1346. United States as Defendant.

(b) (1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, un-der circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 2674. Liability of United States.

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive

in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.

28 U.S.C. § 1404. Change of Venue.

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or

to any district or division to which all parties have consented.

Conn. Gen. Stat. § 52-190a. Prior reasonable inquiry and certificate of good faith required in negligence action against a health care provider. Ninety-day extension of statute of limitations.

(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall

obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be person-ally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such writ-ten opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction

which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

(b) Upon petition to the clerk of the court where the civil action will be filed to recover damages resulting from personal injury or wrongful death, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action